WILLIAMS, J.
[ plaintiff, Martha O. Grantham, appeals a district court judgment granting summary judgment in favor of defendants, Eldorado Resort Casino Shreveport and Full Service Systems Corporation. She also appeals the denial of her motion seeking an adverse presumption of liability against defendants. For the following reasons, we affirm.
*1030 FACTS
On May 21, 2012, plaintiff, Martha 0. Grantham, and her husband dined at the buffet located in the Eldorado Resort Casino Shreveport (“Eldorado”). Plaintiff alleged that after they finished their meal and were in the process of leaving the restaurant, she slipped and fell after stepping “in a puddle about the size of a saucer, of something that looked to be either salad dressing or banana pudding.”
On February 28, 2013, plaintiff filed a lawsuit against Eldorado, pursuant to LSA-R.S. 9:2800.6, alleging that Eldorado’s employees “knew or should have known of the spilled food item/liquid substance, but no effort had been made to prevent the hazardous condition, or to warn guests of the hazard.” On April 30, 2013, plaintiff filed an amended petition, adding as a defendant Full Service Systems Corporation (“FSS”), the janitorial company responsible for cleaning the floors in the restaurant.
Both Eldorado and FSS moved for summary judgment, arguing, inter alia, that plaintiff was unable to meet her burden under LSA-R.S. 9:2800.6. Specifically, defendants alleged that plaintiff could not prove they had actual or constructive notice of the alleged hazardous condition.
Plaintiff opposed the motion for summary judgment and also filed a |2pretrial motion seeking an adverse presumption of liability against Eldorado on the ground that defendant’s failure to preserve the video-surveillance footage of the incident constituted spoliation of evidence. Plaintiff asserted that Eldorado had at least one video-surveillance camera that recorded all activity in the buffet area. Plaintiff also asserts that Eldorado’s policy required it to preserve at least 15-25 minutes of video-surveillance footage surrounding all incidents on their property. However, in this case, Eldorado saved only seven seconds of the video footage depicting plaintiffs fall. In response, Eldorado conceded that it normally preserves approximately 15-30 minutes of video footage leading up to incidents on its premises. However, on the day in question, the employee normally responsible for retrieving and preserving the video footage was on vacation. The employee who filled in that day had never preserved video footage before; therefore, he saved only footage of plaintiffs fall, rather than the events leading up to the fall.
Following a hearing, the district court denied plaintiffs motion for an adverse presumption of liability on the ground of spoliation. The court also granted summary judgment in favor of defendants and dismissed plaintiffs claims. The court did not issue written reasons for judgment. However, at the conclusion of counsel’s arguments, the judge stated, “[T]he Court’s unable to grant the Motion seeking the Adverse Presumption, and Court does grant the Motion for Summary Judgment.”
Plaintiff appeals.
| aDISCUSSION

Spoliation

Plaintiff contends the district court erred in failing to impose an adverse presumption arising from Eldorado’s failure to preserve at least 15-25 minutes of video-surveillance footage of the buffet area at the time of the plaintiffs fall. She argues that had the surveillance footage been available, she would have been able to prove how long the substance had been on the floor.
Spoliation of evidence occurs when a litigant destroys, conceals or fails to produce evidence within his or her control. This gives rise to an adverse presumption that had the evidence been pro- *1031 dueed, it would have been unfavorable to the litigant. Rodriguez v. Northwestern Nat’l. Ins. Co., 358 So.2d 1237 (La.1978); Acadian Gas Pipeline Sys. v. Nunley, 46,-648 (La.App.2d Cir.11/2/11), 77 So.3d 457, writ denied, 2011-2680 (La.2/10/12),. 80 So.3d 487. The law is settled, however, that when the failure to produce the evidence is adequately explained, the presumption does not apply. Id.
Determination of the appropriate sanction, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis. Bertrand v. Fischer, 2011 WL 6254091 (W.D.La. 2011) (not reported), citing Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423 (2d Cir.2001). The appellate standard of review for a trial court’s decision of whether an adverse presumption for spoliation of evidence should be imposed is whether the trial court abused its discretion. See, Acadian Gas Pipeline System v. Nunley, supra; Paradise v. Al Copeland Inv., Inc., 2009-0315 (La.App.1st Cir.9/14/09), 22 So.3d 1018.
In Acadian Gas Pipeline Sys. v. Nunley, supra, the defendants appealed, arguing the trial court erred in failing to impose an adverse presumption based on the plaintiffs failure to preserve or produce data supporting the selection of a route for a pipeline. This court concluded that the trial court did not abuse its discretion in failing to apply the presumption, stating:
[T]he duty to preserve evidence is enforceable if it arose from a statute, contract, special relationship between the parties or an affirmative agreement or undertaking to preserve the evidence. The [defendants] have not cited any statute or contract requiring [the plaintiff] to maintain the kind of records requested.
Id., at 465.
In the instant case, plaintiff and defendants submitted deposition testimony in support of and in opposition to the motion for summary judgment. Teresa Shirley, Eldorado’s “guest relations manager/risk manager,” testified that she prefers to preserve “at least 15 minutes” of surveillance video prior to an incident and “15 minutes” afterwards. She stated the following reasons for doing so are: to see if a hazard existed and, if so, how long it had been there; and to see whether or not anyone had been having difficulty navigating the area where the fall occurred. Shirley stated that only seven seconds of video was preserved in this case; the footage depicted only the fall itself.
Walter Patton, an Eldorado security investigator, testified that he was responsible for “looking] at every incident report ... and follow-up on |5whatever’s needed, be it video for the incident or interviewing peoplef.]” He explained the normal procedure as follows: the security officer who prepared the report would turn in the report at the end of his or her shift; at the beginning of each day, he (Patton) would review the reports and the related video footage. Patton also testified that the casino utilized a digital video-recording (“DVR”) system, and video footage that is not reviewed and saved is automatically overridden by the system; videos that are saved are stored on an independent network storage device and kept for a minimum of five years.
However, in this case, Patton testified that he was on vacation when the incident occurred. Gene Wilson was the officer responsible for investigating the incident and retrieving and preserving the video-surveillance footage. When Patton returned from vacation, he was not responsible for reviewing reports and videos of incidents that had taken place in his absence.
*1032 Gene Wilson, the security investigator who was responsible for retrieving and saving the video in this matter, was also deposed. According to Wilson, he had very limited experience with the surveillance footage retrieval process. He testified that he had been instructed to retrieve and save at least 15 minutes of video footage surrounding all incidents. However, he did not do the task correctly. According to him, he did not know at the time that he had not completed the process correctly.
It is undisputed that plaintiff did not cite any statute or contract that required Eldorado to preserve the surveillance footage. Rather, plaintiff | „relies on the testimony of Eldorado’s employees that it was the company’s usual practice to preserve at least 15-25 minutes of surveillance video surrounding a fall. Plaintiff did not introduce into the record any written policy to which Eldorado allegedly failed to adhere. The record does not indicate that Eldorado had a duty to retrieve and preserve the surveillance footage. Nor is there any showing that Eldorado and its employees intentionally deleted or destroyed the surveillance footage. The testimony indicated that Wilson was inexperienced in the surveillance retrieval/storing process, and that he inadvertently saved only the video recording of the incident, rather than the minutes leading up to the fall and immediately thereafter. The trial court apparently accepted Eldorado’s explanation. Based on this record, we cannot say that the trial court abused its discretion in failing to apply an adverse presumption based on spoliation.

Summary Judgment

Plaintiff also contends the district court erred in granting summary judgment in favor of defendants. She argues that the court erred in finding that she failed to meet her burden of proving that defendants had constructive notice of the spill.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A genuine issue of material fact is one as to which reasonable persons could disagree. Argonaut Great Cent. Ins. Co. v. Hammett, 44,308 (La.App.2d Cir.6/3/09), 13 So.3d 1209, unit denied, 2009-1491 (La.10/2/09), 18 So.3d 122.
When a motion for summary judgment is properly made and supported, the adverse party may not rest on the mere allegations or denials of his pleading, but he must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967(B). This requires the plaintiff to make a positive showing of evidence creating a genuine issue as to an essential element of her claim; mere speculation is not sufficient. Babin v. Winn-Dixie La., Inc., 2000-0078 (La.6/30/00), 764 So.2d 37; Cavet v. Louisiana Extended Care Hosp., 47,141 (La.App.2d Cir.5/16/12), 92 So.3d 1122. If the adverse party fails to produce the required factual support to show that she will be able to meet her evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. LSA-C.C.P. art. 966(C)(2); Caret, supra; Russell v. Eye Associates of Northeast La., 46,525 (La.App.2d Cir.9/21/11), 74 So.3d 230.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Argonaut Great Cent. Ins. Co., supra. Summary judgments are favored under Louisiana law; however, factual in *1033 ferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and doubt must be resolved in the opponent’s favor. LSA-C.C.P. art. 966(A)(2). Argonaut Great Cent. Ins. Co., supra.
Imposition of liability against a merchant for a patron’s injuries resulting from an accident on the merchant’s premises is governed by the | ^merchant liability statute, LSA-R.S. 9:2800.6. Davis v. Wal-Mart Stores, Inc., 2000-0445 (La.11/28/00), 774 So.2d 84; Carney v. Eldorado Resort Casino Shreveport, 48,761 (La.App.2d Cir.1/29/14), 132 So.3d 546. LSA-R.S. 9:2800.6 provides, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages ... sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
[[Image here]]
lain addition to proving the elements set forth in LSA-R.S.
9:2800.6(A) and (B), a plaintiff must come forward with positive evidence showing that the damage-causing condition existed for some period of time and that such time was sufficient to place a merchant defendant on notice of its existence. White v. Wal-Mart Stores, 97-0393 (La.9/9/97), 699 So.2d 1081; Williams v. Piggly Wiggly, 49,010 (La.App.2d Cir.5/14/14), 138 So.3d 1260. Mere speculation or suggestion is not enough to meet the stringent burden imposed upon a plaintiff by the statute governing negligence claims against merchants. Finley v. Racetrac Petroleum, Inc., 48,923 (La.App.2d Cir.4/9/14), 137 So.3d 193; Hubbard v. AP3 Invs., L.L.C., 43,673 (La.App.2d Cir.11/19/08), 997 So.2d 882.
In White v. Wal-Mart Stores, supra, the supreme court stated:
Though there is no bright line time period, a claimant must show that ‘the condition existed for such a period of time[.]’ Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition ex *1034 isted for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
Id., 699 So.2d at 1084-85 (footnote omitted).
In the instant case, plaintiff testified that she was in the process of walking out of the restaurant when one of her feet slipped. She also testified that she did not know the identity of the substance in which she | flipped, and she had not seen anything on the floor prior to her fall. Plaintiff also admitted that she did not know how long the substance had been on the floor, and she did not know whether or not defendants had a reasonable opportunity to clean the spill before she slipped and fell.
Annette Bryant, a cook at the restaurant, testified by deposition that she was attending the buffet approximately three feet from the area of plaintiffs fall. She stated that she did not witness plaintiffs fall, she did not see the substance in which plaintiff fell, and she did not see anything on the floor before, during or after the fall. Bryant also stated that pedestrian traffic in the buffet area was “kind of steady” that evening; however, she did not see anyone else slip, nor did she hear anyone complain that any items/substances were on the floor. Bryant further testified that if she had seen anything on the floor, then, as per Eldorado’s policy, she was required to come from behind her station and stand at the location of the spill/hazardous item until someone placed a “wet floor” sign in the area. FSS would have been alerted to clean the spill.
Jonathan Jenkins, the Eldorado security officer who prepared the “Guest Injury/Mishap Record” of the fall, also testified via deposition. In the incident report, Jenkins noted:
The guest suffered a slip & fall while walking through by the salad en route to the exit. The guest and her husband had eaten their meal and were leaving when she accidently stepped in some food someone had dropped onto the floor.
During his testimony, Jenkins described the substance in which plaintiff slipped as “pretty much like a salad type thing. Like a potato salad” and h/‘had yellow in it and green.” Jenkins also testified that none of the employees he interviewed concerning the incident recalled seeing anything on the floor prior to plaintiffs fall. He further stated that he was not aware of any employee, of either Eldorado or FSS, who saw the hazard prior to plaintiffs fall. According to Jenkins, he did not know how long the item had been on the floor or how it got there; he merely “assumed” that another guest had dropped it.
Teresa Shirley also testified via deposition. She stated that, as a part of their safety training, Eldorado employees were instructed to be on the lookout for food spills and hazards. She stated that she had not received any information to indicate that Eldorado employees were aware that something was on the floor prior to plaintiffs fall.
Victor Vargas, an FSS employee, testified that FSS had 87 employees working at Eldorado. He stated that the FSS employees were responsible for cleaning the buffet area primarily at night. Vargas also testified that FSS cleaned spills only when called to do so by Eldorado employees. He further stated that he was not aware of any FSS employee who saw a hazard on the floor prior to plaintiffs fall *1035 on the evening in question. However, an FSS employee cleaned the spill after the incident.
The video footage depicting plaintiffs fall was played for some of the employees during their depositions. None of the employees testified that he or she saw the substance in which plaintiff slipped. Walter Patton, one of Eldorado’s security investigators, expressed his belief that based on the location of plaintiffs foot before the fall and where her body landed, she, | minore than likely, landed on top of the substance on which she slipped.
After reviewing this record, we find that plaintiffs testimony, accompanied by the security report, established that some type of food item/substance was on the floor at the time of plaintiffs fall. However, the evidence did not establish any temporal element tending to prove that the food item/substance had been on the floor for any specific amount of time. Our jurisprudence clearly establishes that a claimant who simply shows that the condition existed, without an additional showing that the condition existed for some time before the fall, has not carried the burden of proving constructive notice as mandated by LSA-R.S. 9:2800.6. Additionally, the testimony established that traffic in and around the buffet area was “steady” that evening, no one reported seeing anything on the floor and no one slipped in any substance. Accordingly, we find that the evidence submitted by plaintiff was insufficient to establish constructive notice. Thus, this record supports the district court’s conclusion that Eldorado and FSS were entitled to summary judgment as a matter of law.
CONCLUSION
For the reasons set forth herein, the grant of summary judgment in favor of defendants, Eldorado Resort Casino Shreveport and Full Service Systems Corporation, is hereby affirmed. Costs of this appeal are assessed to plaintiff, Martha O. Grantham.
AFFIRMED.